**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>United States of America</u>

    v.                                            Civil No. 05-cv-85-JM

<u>Thirty-Eight Thousand Dollars
($38,000.00) in United States
Currency, More or Less, seized
from Alvin Drake</u>

**<u>O R D E R</u>**

In this action, both the plaintiff and the claimant of the defendant <u>in</u> <u>rem</u> United States Currency each move for summary judgment.  I find that there are numerous genuine issues of material fact upon which a reasonable jury could find for either side.  Consequently, I deny both motions.

<u>Standard of Review</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved

in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit."  Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment.  Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

In this case, both parties have moved for summary judgment.

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001); see also Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004).

## Facts

On January 21, 2005, at approximately 11:00 p.m., Sergeant Christopher A. Ruel stopped Alvin Drake for illegal passing while Drake was driving one of his company's extended cab pickup trucks. In his Declaration (document no. 22.2) and in his investigation report (document no. 22.3), Ruel states that he detected the smell of marijuana smoke coming out of the truck cab as he approached the passenger side of the truck. Ruel states that at first Drake denied having any marijuana, but that he then got a half-smoked marijuana cigarette from the ashtray and handed it to him (document no. 22.2).

In contrast, Drake denied ever smoking pot, growing it or buying it at his deposition (document no. 26.1 at 76). Drake testified that the marijuana joints in the truck "were found on

the floor," they consisted of "two little pieces of charged [sic] vegetation and some cigarette wrapping paper," and he added that, "I didn't obtain them." (Document No. 26.1 at 76).

The conflict between Ruel's and Drake's version of the traffic stop continues.  In his Declaration, Ruel states that:

> I placed my left hand on Drake's front pocket and felt something cylindrical.  Drake pulled away from me and put his hand in his pocket.  In response, I pushed Drake against the truck, but Drake pulled something out of his front pocket and threw it away.  The object struck the back of the cab of his truck and fell into the rear bed of the truck.  Drake continued to struggle with me until I was forced to use my baton to force him to the ground where I handcuffed him.

(Document No. 22.2, ¶ 5).  At his deposition, Drake testified:

> Q.   Okay.  Why did you at first tussle with Sergeant Ruel, Mr. Drake, when all that happened?
>
> A.   I didn't tussle.
>
> Q.   Is he making up any description?
>
> A.   Well, I'm going to tell you, they can make up a pretty goddamn good story when they want to.
>
> Q.   And how much of the story do you contend is made up?
>
> A.   I had rotator surgery.  I asked him if he had to cuff me, please cuff my hands in front of me.  He grabbed my left arm and shoved it up between my shoulder blades, and it hurt and I spun around; and in the process of me spinning around, that gentleman backed up and fell on his ass.
>
>      Now, with him laying on the ground, I said, well,

4

```
     I know the drill, I laid on the ground.  He got up, put
     his frigging knee into my back and cuffed me.

          That's the truth of the whole story.  But I
     accepted responsibility for that.

     Q.   Okay.  So there was no baton?

     A.   There was no baton, there was no nothing.

     Q.   And then what about the pill bottle?

     A.   That was baloney.
```
(Document No. 26.1 at 73-74).

The Government asserts that "a veritable traveling pharmacy" of illegal substances was found in Drake's pickup truck after his arrest, including marijuana, methamphetamines, "crack" cocaine, and prescription painkillers containing oxycodone and Diazepam, none of which were prescribed to Drake (document no. 22.2, ¶¶ 8-10). But Drake testified that the pickup truck was used by multiple people before January 21, 2005 (document no. 26.1 at 76 and 78-79). There is evidence in the record showing that identified persons have claimed ownership of certain of the prescription drugs, crack pipes and the methamphetamines that was found in the truck (id. at 80). In addition, a gun and ammunition that was found in the truck has been identified as belonging to another identified person who used the pickup truck

(document no. 26.2).

The Government cites evidence that the currency that was seized from the truck, which was located in a brown paper bag without any controlled substances, consisted of bills that appeared to be fairly new and crisp, thereby disputing Drake's claim that he had accumulated it over time (document no. 22.2, ¶ 11). Drake responds, however, that there are no references to the condition of the currency in the contemporaneous reports, and that there is no dispute that the currency was deposited in a bank on March 25, 2005. Therefore, it is no longer available for inspection. The government emphasizes the significance of K9 Rambo's positive narcotics alert to the seized currency as a factor warranting judgment in its favor, but Drake disputes the probative value of that evidence including because the alert occurred several days after the traffic stop.

Finally, the Court notes that the Government cites as another factor supporting the entry of judgment in its favor is that Drake was mistaken as to how much cash was in the truck at the time of the traffic stop, and that Drake's explanations for having such a large amount of cash with him when he was stopped have been inconsistent. Drake responds that his initial claim --

that he intended to hide the money because he did not want his former wife to get it in their divorce -- has been fundamentally consistent.  Drake alleges that he has been in the logging business for the last twenty years (document no. 26.1 at 6), that his customers usually pay him in cash, that he has cashed rather than deposited checks that he has received (id. at 33), that he has made large purchases using cash (id. at 48), and that it was not uncommon for him to carry $10,000 to $15,000 at any time (id. at 25).  Drake's former wife testified at her deposition that many people paid Drake in cash for cord wood (document no. 26.8 at 8), that she threatened to take everything that Drake had in the divorce on the night of the traffic stop (id. at 6-9), and that she was not surprised to learn that Drake had that $38,000 with him when he was stopped (id. at 8).

## Discussion

After considering the motions for summary judgment, drawing all reasonable inferences in favor of the non-moving party with respect to each motion, the Court finds that there are numerous genuine issues as to material fact that prevent the entry of summary judgment for either party.  There are genuine issues as to what transpired during the traffic stop, including whether

Drake attempted to throw away an object containing controlled substances. There is a genuine dispute as to whether the controlled substances that were found in the pickup truck after the traffic stop belonged to Drake. And, there is a genuine dispute as to the credibility of Drake's explanation for having had such a large amount of cash with him on the night of the traffic stop. Without going into to further detail, the Court finds that the above-cited examples are just the beginning of the disputed issues of material fact in this case. Indeed, virtually every material fact in this case is disputed. It is unnecessary to write an opus to address what should be apparent to counsel -- this is not an appropriate case for summary judgment.

## Conclusion

For the reasons set forth above, the Court finds that neither party is entitled to summary judgment, and therefore denies both the Claimant's motion (document no. 21), and the Plaintiff's motion (document no. 22).

**SO ORDERED.**

>        /s/ James R. Muirhead
> James R. Muirhead
> United States Magistrate Judge

Date: July 21, 2006

cc: Jean B. Weld, Esq.
    Robert J. Rabuck, Esq.
    David H. Bownes, Esq.